# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**MEDCHOICE FINANCIAL, LLC,**

     **Plaintiff,**

                                  **Case No. 2:11-cv-212**
     **v.**                               **JUDGE GREGORY L. FROST**
                                    **Magistrate Judge Mark R. Abel**

**ADS ALLIANCE DATA SYSTEMS, INC.,**
**et al.,**

     **Defendants,**

     **v.**

**PHILLIP W. HALL , et al.,**

     **Counterclaim Defendants.**

### OPINION AND ORDER

This matter is before the Court for consideration of Counterclaim Defendant Philip Hall's

Motion to Dismiss for Lack of Jurisdiction and for Failure to State a Claim upon which Relief

Can Be Granted (ECF No. 25), Counterclaim Defendant MedChoice Financial, LLC's Motion to

Dismiss (ECF No. 27), World Financial Network Bank's Response in Opposition to MedChoice

Financial LLC's Motion to Dismiss (ECF No. 36), World Financial Network Bank's Response in

Opposition to Philip Hall's Motion to Dismiss (ECF No. 37), Counterclaim Defendant Philip

Hall's Reply in Support of his Motion to Dismiss for Lack of Personal Jurisdiction and for

Failure to State a Claim upon which Relief Can Be Granted (ECF No. 39), and Counterclaim

Defendant MedChoice Financial LLC's Reply in Support of its Motion to Dismiss for Failure to

State a Claim Upon Which Relief Can Be Granted (ECF No. 40).  For the reasons that follow,

the Court **DENIES** the motions to dismiss. (ECF Nos. 25, 27.)

## I. Background

The parties' complaints conflict as to some of the basic facts underlying this action.
Plaintiff MedChoice Financial, LLC ("MedChoice") defines itself as a financial services
company that provides financing to patients of healthcare providers in a specified network.
(ECF No. 7 ¶ 8.)  Defendant World Financial Network Bank (the "Bank") defines itself as an
issuer of private label and co-brand credit card accounts.  (ECF No. 15, at 2 ¶ 9.)  In September
2005, MedChoice and the Bank entered into a Private Label Credit Card Program Agreement
("the Contract") under which MedChoice or the Bank (the parties dispute this fact) issued credit
cards to patients in MedChoice's provider network.  Under the Contract, MedChoice acted as the
"middle man" between the Bank, the individual patients/cardholders, and the network healthcare
providers in order to finance certain medical procedures and products.  (*See* ECF Nos. 7 ¶ 1; 15,
at 20 ¶ 11.)  The Contract remained in effect until the Bank terminated it in September 2010.
(ECF Nos. 7 ¶ 59; 15, at 8 ¶ 54).

In March 2011, MedChoice filed suit against the Bank for the Bank's conduct
surrounding and leading up to the termination of the Contract.  (ECF No. 2.)  MedChoice
amended its complaint in September 2011 to add the Bank's alleged parent company, ADS
Alliance Data Systems, Inc. ("ADS"), as a defendant (together with the Bank, "Defendants").[1]
(ECF No. 7.)  MedChoice asserts that the Bank expressly breached certain terms of the Contract,
exercised its discretion under the Contract in bad faith, and wrongfully terminated the Contract.
MedChoice also asserts various causes of action against Defendants including tortious

---

[1]The Bank denies that ADS is its parent company and asserts that ADS was merely "the
servicer for the Bank with regard to the administration of the [Contract]."  (ECF No. 15 at 2, 19.)

interference with contract, unjust enrichment, breach of fiduciary duty, and violation of the Ohio Trade Secrets Act, among others.

Defendants answered MedChoice's complaint on October 18, 2011.  (ECF No. 11.)  On November 8, 2011, Defendants filed an Amended Answer in which they assert several counterclaims against MedChoice and its owners, Philip Hall ("Hall") and Michelo Naturile ("Naturile") (collectively, "Counterclaim Defendants").  (ECF No. 15.)  According to Defendants, the Contract required MedChoice to submit credit transactions for approved goods and services to the Bank.  The Bank would then place a charge on the patient/cardholder's account and transfer the funds to MedChoice, which would then transfer the funds to the healthcare provider.  The Bank had discretion as to how it handled the MedChoice accounts and could, for example, "charge back" accounts to MedChoice that it disputed.  Defendants assert that Counterclaim Defendants fraudulently submitted charges for unauthorized goods and services that caused the Bank to extend credit it would not otherwise have extended.  Defendants also assert that, after the Bank transferred funds to MedChoice for the charged transactions, Counterclaim Defendants did not transfer the funds to the healthcare providers as the Contract required.  Finally, when the Bank sought to "charge back" disputed accounts to MedChoice, Defendants assert that MedChoice owed substantially more to providers than it had in its bank account.  The Counterclaim sets forth several causes of action against Counterclaim Defendants including breach of contract, fraud, violations of Ohio's Deceptive Trade Practices Act, and defamation, among others.  (ECF No. 15 at 18–38, ¶¶ 48–118.)

Hall, MedChoice and Naturile have each moved to dismiss certain counterclaims.  Hall filed a motion on December 15, 2011 to dismiss the claims against him pursuant to Rules

12(b)(2) and 12(b)(6). (ECF No. 25.) MedChoice concedes that this Court has jurisdiction over it but moved on December 15, 2011 to dismiss Counts III (Fraud), V (Violation of Ohio's Deceptive Trade Practices Act), and VI (Defamation) pursuant to Rule 12(b)(6). (ECF No. 27.) Naturile filed a motion on January 30, 2012 to dismiss the claims against him pursuant to Rules 12(b)(2) and 12(b)(6). (ECF No. 35.) This Opinion and Order addresses MedChoice's and Hall's motions to dismiss.

## II. Discussion

### A. MedChoice's Motion to Dismiss Pursuant to Rule 12(b)(6)

MedChoice moves to dismiss Counts III (Fraud), V (Violation of Ohio's Deceptive Trade Practices Act), and VI (Defamation) of Defendants' Counterclaim pursuant to Rule 12(b)(6). Specifically, MedChoice argues that the economic loss rule bars Defendants' fraud and Deceptive Trade Practices Act claims and that Defendants failed to allege sufficient facts to support a defamation claim under Ohio law. MedChoice's arguments are not well taken.

Dismissal under Rule 12(b)(6) is appropriate if the complaint fails to state a claim upon which the Court can grant relief. Fed. R. Civ. P. 12(b)(6). In ruling on a Rule 12(b)(6) motion, the Court must construe the complaint in the light most favorable to the plaintiff, treat all well-pled allegations contained therein as true, and determine whether the factual allegations present plausible claims for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court must view the complaint as a whole and view each individual allegation in the context of the entire complaint. *In re Polyurethane Foam Antitrust Litig.*, 799 F.Supp. 2d 777, 782 (N.D. Ohio 2011).

Rule 8(a)(2) requires that a pleading contain a "short and plain statement of the claim

4

showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Rule 8 does not require "detailed factual allegations." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570).  Instead, it requires "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Id*.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Id*.

The United States Supreme Court has explained that "a formulaic recitation of the elements of a cause of action" is insufficient to state a plausible claim.  *Twombly*, 550 U.S. at 555.  "Although for purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [it is] 'not bound to accept as true a legal conclusion couched as a factual allegation.' " *Iqbal*, 129 S. Ct. at 1937 (quoting *Twombly*, 550 U.S. at 555). A plaintiff need not allege specific facts but must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal citations omitted).

### 1.  Count III (Fraud)

Count III of Defendants' Counterclaim alleges common law fraud.  The elements of a fraud claim in Ohio are (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) that is material to the transaction at hand, (c) made falsely, or with such utter disregard and recklessness as to its truth or falsity that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or the concealment, and (f) a resulting injury proximately caused by the reliance. *Gator Dev. Corp. v. VHH, Ltd*., 1st Dist. No. C-080193, 2009-Ohio-1802, ¶ 26.

5

Fraud claims in Ohio are subject to the limits of the economic loss doctrine.  The Ohio Supreme Court has stated:

> The economic loss rule generally prevents recovery in tort for purely economic loss.  This rule stems from the recognition of the balance between tort law, designed to redress losses suffered by breach of a duty imposed by law to protect societal interests, and contract law, which holds that 'parties to a commercial transaction should remain free to govern their own affairs.' . . .
>
> When a duty in tort exists, a party may recover in tort.  When a duty is premised entirely upon the terms of a contract, a party may recover based upon breach of contract.  Protection against economic losses caused by another's failure to properly perform is but one provision the contractor may require in striking his bargain.  Any duty in this regard is purely a creature of contract.

*Corporex Dev. & Constr. Mgmt., Inc*., 106 Ohio St. 3d 412, 2005-Ohio-5409, 835 N.E. 2d 701, ¶ 6, 10 (internal citations omitted).

This Court has noted that "[m]ost courts that have applied the economic loss doctrine [] have done so to bar recovery of economic loss in negligence and strict liability." *ITS Fin., LLC v. Advent Fin. Servs*., No. 10-41, 2011 WL 4810183, at *6 (S.D. Ohio Oct. 11, 2011).  This is so because "the fundamental policy consideration underlying the economic loss rule—the inevitable absence of a duty independent of that created by a contract in a negligence action for purely economic loss—is missing in the intentional tort context, where duty is not an element of the claim." *Reeingineering Consultants, Ltd. v. EMC Corp*., No. 08-47, 2009 U.S. Dist LEXIS 2627, at *16–17 (S.D. Ohio Jan. 14, 2009); *Eyesoldt v. Proscan Imaging*, 194 Ohio App. 3d 630, 2011-Ohio-2359, 957 N.E.2d 780, ¶ 21 (quoting *Reengineering Consolutants*).  *See also Corporex,* 106 Ohio St. 3d ¶ 6 (torts involve a "duty imposed by law to protect societal interests").  It is well settled, for example, that fraudulent inducement implicates a general duty to avoid wrongful conduct that induces a party to enter into a contract. *ITS Fin., LLC*, 2011 WL

6

4810183 at *4.

The economic loss doctrine, in contrast, bars only those tort claims that seek to "compensate parties for losses suffered as a breach of duties assumed *only by agreement*." *Corporex*, 106 Ohio St. 3d ¶ 6 (emphasis added). "That type of compensation necessitates an analysis of the damages which were within the contemplation of the parties when framing their agreement." *Id*. In other words, the economic loss doctrine bars only those tort claims in which a party seeks to recover the benefit of his bargain. *See Ketcham v. Miller*, 104 Ohio St. 372, 376–78, 136 N.E. 145 (1922) (economic loss doctrine barred a tort claim in which the party sought to recover damages equal to the value of a lease); *Gator Dev. Corp.*, 2009-Ohio-1802, ¶ 17–18 (in a case involving a contract for real estate, the economic loss doctrine barred a tort claim in which the party sought to recover the real estate or a monetary figure equal to the value of the contract). Such claims are more akin to "bad faith breach of contract," which Ohio does not recognize as a cause of action, than fraud. *See Gator Dev. Corp.*, 2009-Ohio-1802, ¶ 18. *Cf. Cincinnati Gas & Electric Co. v. General Electric Co.*, 656 F.Supp. 49, 71–72 (S.D. Ohio 1986) (where defendant continued to market defective technology to plaintiffs and "induced them to pay for additional experimental work" under a contract, "much more is asserted in plaintiffs' fraud claim than a bald allegation of malicious or bad faith breach of contract").

Here, Defendants allege more than bad faith breach of contract and seek to recover more than just the benefit of their bargain. Necessarily taking Defendants' allegations as true, Counterclaim Defendants did not just breach the contract by submitting charges for unauthorized services. Instead, they orchestrated a scheme to submit such charges, to mislead the Bank into thinking such charges were authorized, and to induce the Bank to extend credit for such charges

that the Bank would not otherwise have extended.  (ECF No. 15, at 34 ¶¶ 87, 93.)  Defendants

also allege that MedChoice breached the Contract by failing to settle with healthcare providers,

then "hid from the Bank the fact that MedChoice was not settling with Providers" and

"continued to submit credit charges for procedures performed by Providers that Counterclaim

Defendants knew MedChoice would be unable to pay."  (ECF No. 15, at 23–24 ¶ 24–26, 28.)

These actions are more analogous to fraudulent inducement than fraudulent breach of contract in

that they implicate a positive duty to avoid wrongful conduct that induces a party to continue its

obligations under a contract when it would not otherwise have done so.  *Compare Cincinnati*

*Gas & Electric Co*., 656 F.Supp. at 71–72 (economic loss rule did not bar fraud claim when

party "induced" the opposing party to pay for additional experimental work under the contract)

*with Gator Dev. Corp.*, 2009-Ohio-1802, ¶ 18 (barring fraud claim when "[a]ny duty to disclose

arose only by contract, and Gator did not allege any detrimental reliance on a positive

misrepresentation to establish a fraud claim.").

       As for damages, Defendants allege that the Bank "was damaged by ... continuing its

relationship with MedChoice" in reliance on MedChoice's fraud.  (ECF No. 15, at 35 ¶¶ 95–96).

The fraud claim seeks damages that the Bank incurred by continuing its obligations under the

Contract when, but for the fraud, it would have terminated the Contract.  Assuming all facts in

the Counterclaim as true, the Court agrees with Defendants that: "While some of the damages

suffered by the Bank may also be recoverable in connection with the Bank's breach of contract

claims, others will not be."  (ECF No. 36 at 13.)  The economic loss doctrine therefore does not

bar Defendants' fraud claim.

       Counterclaim Defendants do not offer any additional argument as to why Defendants'

Counterclaim does not adequately plead the elements of fraud under Ohio law.  Accordingly, the Court **DENIES** Counterclaim Defendant MedChoice Financial, LLC's Motion to Dismiss as it relates to Count III of Defendants' Counterclaim.  (ECF No. 27.)

### 2.  Count V (Violation of Ohio's Deceptive Trade Practices Act)

MedChoice argues that the economic loss rule bars Defendants' Deceptive Trade Practices Act claim (Count V).  MedChoice asserts that the Count V allegations are the same as the Count III allegations (Fraud) and asks the Court to bar Count V for the same reasons that it asked the Court to bar Count III.  (ECF No. 28, at 8.)

Because the Court found that Defendants' fraud allegations go beyond a breach of contract claim, and because MedChoice does not attempt to distinguish Defendants' Count V allegations from Defendants' Count III allegations, this argument fails for the reasons as those set forth in Section II(A)(1) of this Opinion and Order.  The Court need not address MedChoice's argument that the economic loss doctrine applies to statutory tort claims. Accordingly, the Court **DENIES** Counterclaim Defendant MedChoice Financial, LLC's Motion to Dismiss as it relates to Count V of Defendants' Counterclaim.  (ECF No. 27.)

### 3.  Count VI (Defamation)

MedChoice argues that Defendants failed to plead Count VI (Defamation) with sufficient particularity.  Specifically, MedChoice argues that Defendants "have not alleged to whom the allegedly false statements were made, when they were made, or by whom they were made." MedChoice claims that it needs these facts in order to determine "whether the alleged statements are properly attributable to MedChoice" and "which statements to which providers by which defendants are even the subject of the claim." (ECF No. 40 at 12.)  MedChoice adds that

9

Defendants' "allegations regarding privilege, fault, actionability, and injury are likewise deficient."  (ECF No. 28 at 8.)

The elements of a defamation claim under Ohio law are (1) a false and defamatory statement; (2) about the plaintiff; (3) published without privilege to a third party; (4) with fault or at least negligence on the part of the defendant; (5) that was either defamatory per se or caused special harm to the plaintiff.  *Thomas v. Cohr, Inc*., 1st Dist. No. C-110094, 2011-Ohio-5916, ¶ 24.

Here, Defendants allege the following facts:

113. MedChoice made false statements about the Bank to companies that originated loans for MedChoice, including: (1) telling at least one such entity to which MedChoice owed funds for certain procedures that it could not pay over the funds because the Bank had not yet funded the loans when, in fact, the Bank had already transmitted the loan proceeds to MedChoice; and (2) telling at least one other such entity that the Bank had instructed MedChoice not to fund loans when, in fact, the Bank had already funded the loans and had never instructed MedChoice not to pay over the funds to the loan originator.

114. MedChoice's false statements to the loan originators as set forth above injured the Bank's reputation, adversely affected the Bank in its trade or business and caused damages to the Bank.

115. MedChoice was not privileged to make the false statements, it knew of the falsity of its statements and it made them with actual malice and for a wrongful purpose.

(ECF No. 15, at 37–38 ¶¶ 113–15.)

The general pleading standards of Rule 8(a)(2) apply to Defendants' defamation claim. *See, e.g., Universal Health Group v. Allstate Ins. Co.*, No. 09-12524, 2010 U.S. Dist. LEXIS 55974, at *11 (E.D. Mich. May 12, 2010) ("[N]othing in the Federal Rules suggests that pleading a defamation claim is subject to higher pleading standard than any other claim."); *Scheser v. Island Hopsitality Mgmt., Inc*., No. 09-961, 2010 U.S. Dist. LEXIS 41674, at *4

(W.D. Ky. Apr. 28, 2010) (there is "no reason to impose a heightened pleading standard" in a defamation case).  Under Rule 8(a)(2), "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

As an initial matter, Defendants assert Count VI solely against MedChoice and not against Hall or Naturile.  (ECF No. 15, at 37.)  There is no confusion as to which party Count VI implicates.  Defendants assert that "MedChoice made false statements about the Bank." (ECF No. 15, at 37 ¶ 113.)  Necessarily taking all facts as true, there is no question whether the statements are properly attributable to MedChoice.  Defendants have identified the alleged defamatory statement (that the Bank had not yet funded the loans when it had, in fact, funded the loans), the third parties to whom MedChoice made the alleged statements ("companies that originated loans for MedChoice"), and the circumstances in which MedChoice made the alleged statements (after MedChoice began to fail to settle with providers, it made the alleged statements in order to "deflect complaints from Providers who MedChoice had failed to pay").  (ECF No. 15, at 23–24, 37–38 ¶¶ 25, 30, 113.)  Requiring a higher level of specificity would impose a heightened pleading standard where the Rules do not require one.  *Compare Erickson*, 551 U.S. at 93 (under Rule 8, a plaintiff need not plead specific facts but must provide fair notice of the claim and the grounds upon which it rests) *with Bennet v. MIS Corp*., 607 F.3d 1076, 1100 (6th Cir. 2010) (under heightened pleading standard of Rule 9(b), a plaintiff must plead "the time, place and content of the alleged misrepresentation...").  The Court declines to institute such a heightened pleading standard here.

11

MedChoice's argument that Defendants' pleading is deficient as to "privilege, fault, actionability, and injury" similarly fails.  As Defendants point out, privilege is an affirmative defense to a defamation claim and Defendants need not plead facts to defeat an affirmative defense.  *Reddy v. JPMorgan Chase Bank*, *N.A.*, No. 09-1152, 2011 U.S. Dist. LEXIS 46849, at *9 (S.D. Ohio May 2, 2011) (privilege is an affirmative defense); *Frank v. Dana Corp*., 646 F.3d 954, 963 (6th Cir. 2011) (plaintiff need not plead facts negating an affirmative defense).  *See also Owner Operator Independent Drivers Assoc., Inc. v. Comerica Bank*, 540 F. Supp. 2d 925, 929 (S.D. Ohio Mar. 31, 2008) ("[P]laintiffs have no duty to plead facts negating an affirmative defense, such as the statute of limitations.")  The Counterclaim clearly alleges fault—"[MedChoice] knew of the falsity of the statements and made them with actual malice"—and sets forth the circumstances giving rise to the facts underlying this assertion. (ECF No. 15, at 24 ¶ 30.)  A defamatory statement that is injurious to a plaintiff's trade or business is defamatory per se and, in such a case, damages will be presumed and need not be pled or proven.  *See, e.g., Murray v. Knight-Ridder, Inc*., 7th Dist. No. 02-BE-45, 2004-Ohio-821, ¶¶ 16, 29.  MedChoice does not attempt in its Reply to rebut Defendants' arguments on these points.

Without more, MedChoice has not shown that Defendants have failed to state a claim upon which the Court can grant relief.  Accordingly, the Court **DENIES** Counterclaim Defendant MedChoice Financial, LLC's Motion to Dismiss as it relates to Count VI of Defendants' Counterclaim.  (ECF No. 27.)

### B.  Hall's Motion to Dismiss

Hall moves to dismiss the claims against him pursuant to Federal Rules 12(b)(2) and

12

12(b)(6).  Hall argues that, though this Court has jurisdiction over MedChoice and thus over Hall

as a representative of MedChoice, it does not have jurisdiction over Hall in his individual

capacity.  Hall also argues that this Court should dismiss all claims asserted against

him—Counts II (Piercing the Limited Liability Company's Veil), III (Fraud), IV (Aiding and

Abetting Fraud), and V (Violation of Ohio's Deceptive Trade Practices Act)—[2]for failure to

state a claim upon which the Court can grant relief.  Hall's arguments are not well taken.

### 1.  Hall's 12(b)(2) Argument

In general, the plaintiff bears the burden of establishing personal jurisdiction over the

defendant.  *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).  Initially, "the

complaint must have 'established with reasonable particularity' those specific facts that support

jurisdiction."  *Palnik v. Westlake Entm't*, 344 F. App'x 249, 251 (6th Cir. 2009).  Then, "in the

face of a properly supported motion for dismissal, the plaintiff must not stand on his pleadings

but must, by affidavit or otherwise, set forth specific facts showing that the court has

jurisdiction."  *Theunissen*, 935 F.2d at 1458.  A court may hold an evidentiary hearing to resolve

apparent factual questions raised in the briefs or it may decide the motion on the affidavits alone.

*Id*.  Absent an evidentiary hearing, a court must consider the pleadings and affidavits in the light

most favorable to the plaintiff and the plaintiff must make a prima facie showing of jurisdiction

in order to defeat the 12(b)(2) motion.  *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th

Cir. 1996).

The facts surrounding Hall's Rule 12(b)(2) argument are not in dispute.  Hall attaches

one affidavit to his motion—his own—asserting that he has "never personally transacted

_____

[2]Hall does not address Count VII (Punitive Damages).

13

business in the state of Ohio," that he has "had no contact in my personal capacity with the State

of Ohio" and that "[a]ll of my contact with the state of Ohio has been in my corporate capacity

for the benefit of MedChoice."  (ECF No. 26-1 at 2.)  The Bank does not dispute these facts but

attaches four affidavits from ADS employees detailing the extent of Hall's contacts with Ohio as

a representative of MedChoice.  (ECF Nos. 37-1–37-4.)  Neither party disputes the other's

factual contentions, and neither party has requested an evidentiary hearing.  Thus, the Court will

decide Hall's motion on the briefs and affidavits alone and must consider Defendants'

Counterclaim in the light most favorable to Defendants.  *See CompuServe*, 89 F.3d 1257 at 1262.

Defendants, as Counterclaim Plaintiffs, must make a prima facie showing that this Court has

jurisdiction over Hall in order to defeat Hall's motion.  *See id.*

Both state and federal law are relevant to the question of whether a plaintiff has carried

his burden in establishing personal jurisdiction over a defendant.  *Int'l Tech Consultants, Inc. v.*

*Euroglas S.A.*, 107 F.3d 386, 391 (6th Cir. 1997).  A federal court sitting in diversity may not

exercise jurisdiction over a defendant unless (i) courts of the forum state would be authorized to

do so under state law and (ii) jurisdiction is compatible with federal due process requirements.

*Id*.

Ohio's long-arm statute does not give Ohio courts jurisdiction to the limits of the due

process clause.  *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012).  This Court must therefore

determine whether Ohio courts would be authorized to exercise personal jurisdiction over Hall

pursuant to Ohio's long-arm statute and Ohio case law.

**a.  State Law Analysis**

Before the Court considers whether Hall's contacts bring him within the reach of Ohio's

long-arm statute, it must determine which of Hall's contacts are relevant to the analysis.  The parties dispute whether Ohio courts would consider Hall's actions taken in his "personal capacity," as Hall argues, or in his "representative capacity," as Defendants argue, in determining whether jurisdiction is appropriate.

Ohio courts recognize the fiduciary-shield doctrine as a limit to a court's exercise of personal jurisdiction.  *See, e.g., State ex rel. DeWine v. S&R Recycling, Inc.,* 7th Dist. No. 09-CO-45, 2011-Ohio-3371, ¶ 27; *Heritage Funding & Leasing Co. v. Phee*, 120 Ohio App. 3d 422, 430, 698 N.E.2d 67 (10th Dist. 1997).  The fiduciary-shield doctrine provides that corporate employees performing acts in their corporate capacity are not subject to the personal jurisdiction of a court for such acts.  *S&R Recycling*, 2011-Ohio-3371 ¶ 27.

The parties agree that Ohio recognizes at least one exception to the fiduciary-shield doctrine.  Where an individual defendant is the "alter ego" of a corporate defendant, a court will "pierce the corporate veil" so as to obtain personal jurisdiction over that individual based on acts taken in his representative capacity.  *Id*.  The parties disagree whether a second exception—a tort exception for cases in which the employee actively participated in the alleged fraud—is available under Ohio law.  The alter ego exception can, however, independently defeat the applicability of the fiduciary-shield doctrine.  *See, e.g., id.* ¶¶ 26–27 (rejecting tort-fraud argument and going on to alter ego analysis).  Thus, if Hall is in fact the alter ego of MedChoice, the Court need not determine whether Ohio law recognizes a fraud exception to the fiduciary-shield doctrine.

For purposes of the alter ego analysis, Hall's sole argument is that Defendants failed to adequately plead the elements of alter ego liability.  The Court must therefore determine whether Defendants' alter ego allegations adequately state a claim for a finding of alter ego liability in

15

Ohio.

### (1) Alter Ego Liability

Ohio courts use a three-pronged test to determine whether a court should pierce the

corporate veil for purposes of a personal jurisdiction analysis.  *S&R Recycling*, 2011-Ohio-3371

¶ 28 (citing *Dombroski v. Wellpoint, Inc.*, 119 Ohio St. 3d 506, 2008-Ohio-4827, 895 N.E. 2d

538, ¶ 22 ; *Belvedere Condominium Owners' Ass'n v. R.E. Roark Cos., Inc.*, 67 Ohio St. 3d 274,

289, 617 N.E. 2d 1075 (1993)).  Alter ego liability exists where: (1) control over the corporation

by those to be held liable was so complete that the corporation has no separate mind, will, or

existence of its own, (2) control over the corporation by those to be held liable was exercised in

such a manner as to commit fraud or an illegal act against the person seeking to disregard the

corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and

wrong.  *Id.*  The party seeking to have the corporate form disregarded bears the burden of proof.

*Id.* ¶ 29.

When a cause of action seeks to pierce the corporate veil on the basis of fraud, it is

subject to the heightened pleading requirements of Rule 9(b).  *See, e.g., Ruffing v. Masterbuilt*

*Tool & Die, LLC*, No. 08-1264, 2009 U.S. Dist. LEXIS 4754, at *45 (N.D. Ohio Jan. 23, 2009)

("A plaintiff who seeks to satisfy the *Dombroski-Belvedere* test by alleging fraud must meet the

heightened pleading requirements imposed by Rule 9(b).").  Rule 9(b) provides: "In alleging

fraud or mistake, a party must state with particularity the circumstances constituting fraud or

mistake."  Fed. R. Civ. P. 9(b).  To satisfy Rule 9(b), the plaintiff must at a minimum "allege the

time, place, and content of the alleged misrepresentation on which he or she relied; the

fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the

16

fraud." *Bennett v. MIS Corp.*, 607 F.3d 1076, 1100 (6th Cir. 2010).  The rule requires a plaintiff

to plead the circumstances of the fraud, and not the evidence of the case, with particularity.

*Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 680 n.9 (6th Cir. 1988).

      Here, Hall argues that there is no nexus between the Bank's factual allegations of control

and any fraud upon or injury to the Bank.  This argument fails.  The Counterclaim asserts that

"Hall used his control over MedChoice ... to prevent the Bank from learning about MedChoice's

financial condition, and to further perpetrate fraud upon the Bank by devising and engaging in

schemes to induce the Bank to extend credit for procedures that were not authorized under the

Program Agreement."  (ECF No. 15, at 32 ¶ 80.)  Defendants allege that Hall (along with

Naturile and MedChoice) devised a fraudulent scheme, which was in fact implemented, to

submit unauthorized charges to the Bank under the false name "Surgery Loans Direct" ("SLD").

(ECF No. 15, at 22 ¶ 21).  The scheme allegedly began after January 2010 and Hall and others

submitted at least $844,000 worth of unauthorized charges to the Bank.  (ECF No. 15, at 22 ¶¶

20, 22).  Hall (along with Naturile) allegedly instructed MedChoice employees not to disclose

the scheme to the Bank[3] and the Bank did not learn of the scheme for several months.  (ECF No.

15, at 23 ¶ 24.)  Finally, Defendants allege that Hall exercised sole control of MedChoice's

finances, diverted money from its bank account for his personal use, and that, eventually,

MedChoice owed $1.1 million in unpaid settlements but had only $15,000 in its bank account.

(ECF No. 15 at 32 ¶¶ 48, 76–78.)  Necessarily drawing all inferences in Defendants' favor,

---

      [3]Defendants assert this fact on "information and belief" and the Court will assume its truth for purposes of this analysis.  *See Palnik v. Westlake Entm't, Inc*., 344 F. App'x 249, 252 (6th Cir. 2009) (facts asserted "on information and belief" will be assumed true for purposes of a personal jurisdiction analysis).

Defendants have adequately alleged that Hall used his control over MedChoice to perpetrate a fraud upon and cause injury to the Bank.

Hall offers one additional argument—that the Bank's fraud allegations are "merely a restatement of the Bank's breach of contract claims" which, under the economic loss doctrine, "cannot form the basis for a fraud claim" and therefore cannot give rise to jurisdiction based on these claims.  (ECF No. 26, at 10).  Defendants have not asserted a breach of contract action against Hall.  *See, e.g., Onyx Envtl. Servs., LLC v. Maison,* 407 F.Supp2d 874, 877 (N.D. Ohio 2005) ("Here, [plaintiff] has no breach of contract action against [specific defendants] and thus tort damages are not redundant.") (citing *Davidson Fuel & Dock Co. v. Picklands Mather & Co.*, 376 N.E.2d 965, 968 (Ohio Ct. App. 1977)).  For this reason and for the reasons set forth in Section II(A)(1) of this Opinion and Order, this argument also fails.

The Court finds that Defendants have sufficiently pled alter ego liability.  Hall offers no additional arguments as to why alter ego liability is not warranted in this case.  Thus, the Court finds that the alter ego exception to the fiduciary-shield doctrine applies and that it may attribute Hall's contacts as a representative of MedChoice to Hall personally for purposes of a personal jurisdiction analysis.  The Court now considers whether these contacts fall within the reach of Ohio's long-arm statute.

### (2) Ohio's Long-Arm Statute

Ohio's long-arm statute provides, in relevant part:

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

   (1) Transacting any business in this state;
. . .
  (3) Causing tortious injury by an act or omission in this state;

18

. . .
(6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state;
. . .
(C) When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him.

Ohio Rev. Code §2307.382.

Hall offers no argument that, if the Court considers his contacts with Ohio in his representative capacity, personal jurisdiction is not appropriate.  Defendants assert that jurisdiction is proper under Ohio Revised Code 2307.382(A)(1), (A)(3); and (A)(6).  In support, Defendants proffer four affidavits detailing the extent of Hall's contacts with Ohio.  The affidavits establish that ADS was and is located in Ohio and that ADS held bi-weekly telephone conferences, into which Hall regularly called, at its office in Ohio.  (ECF No. 37-2 ¶ 3.)  They also establish that Hall traveled to Ohio to negotiate the Contract with ADS employees and on other occasions for meetings relating to the parties' relationship.  (ECF No. 37-1 ¶ 7–9, 37-4 ¶ 3–5.)  Finally, the affidavits establish that ADS processed the charged transactions for the MedChoice program in its office in Ohio, that the Bank paid daily funds to MedChoice from its account located in Ohio, and that MedChoice maintained an Ohio bank account into which the Bank paid daily funds.  (ECF No. 37-3 ¶ 3–5.)  Necessarily regarding these facts as true, Defendants have met their burden in establishing that Hall "transacted business" in Ohio as Ohio courts have interpreted § 2307.382(A)(1).  *See, e.g., NPF XII, Inc. v. Special Care, Inc*., No. C2-00-1048, 2001 U.S. Dist. LEXIS 24347, at *9 (S.D. Ohio, July 17, 2001) (finding defendant "transacted business" under §2307.382(A)(1) where she "conducted telephone calls and other correspondence with the plaintiff, which she knew to be an Ohio company" and "previously

19

visited the state on two occasions in regard to business dealings with NPF predecessors");

*Leisure Sys., Inc. v. R&G, Inc*., Hamilton C.P. No. A-1008873, 2011 Ohio Misc. LEXIS 150, at

*4 (Feb. 15, 2011) (nonresident officer met the "transacting business" test where he "has come

to Ohio for meetings regarding his company's franchise with Plaintiff[,] [h]e has corresponded

regularly with Plaintiff in Ohio[, a]nd he came to Ohio for the launch of the Yogi program in

2008"); *Nat'l City Comm'l Capital, Co. v. Evertile Flooring, Inc*., Hamilton C.P. No. A0911906,

2010 Ohio Misc. LEXIS 489, at *3 (Jan. 6, 2010) (finding § 2307.382(A)(1) satisfied where

"[d]efendants had numerous contacts with Plaintiffs through e-mails and telephone calls, all to

Ohio").

The Court is also satisfied that Hall's contacts meet the requirements of § 2307.382(C).

Finding no opposition from Hall, and assuming all facts in the Counterclaim as true, the Court

agrees with Defendants that:

> Both jurisdiction and the causes of action arise out of Hall's fraudulent scheme to
> submit into Ohio credit transaction records for unauthorized procedures and to
> induce the Bank in Ohio into extending credit for those procedures, as well as his
> failures to disclose and concealments—despite regular communications with the
> Bank and ADS in Ohio—of both the fraudulent submission of credit transactions and
> MedChoice's fraudulent submission of credit transactions to the Bank for payment
> when MedChoice knew that it would not use those payments to settle with the
> Provider who rendered those services.

(ECF No. 37, at 21.)

Finding that Hall "transacted business" in Ohio pursuant to§ 2307.382(A)(1), the Court

need not address Defendants' contentions that § 2307.382(A)(3) and (A)(6) provide additional

grounds for jurisdiction.  The Court concludes that Ohio courts would be authorized to exercise

jurisdiction over Hall.

### b.  Federal Due Process

20

To comply with federal due process, a court may exercise personal jurisdiction over a non-resident defendant only if such jurisdiction arises from "certain minimum contacts with [the forum] such that maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Internat'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal citations omitted).  Jurisdiction may be found to exist either generally, in cases in which a defendant's 'continuous and systematic' conduct within the forum state renders that defendant amenable to suit in any lawsuit brought against it in the forum state, or specifically, in cases in which the subject matter of the lawsuit arises out of or is related to the defendant's conduct with the forum state.  *Brunner v. Hampson*, 441 F.3d 457, 463 (6th Cir. 2006); *Air Products & Controls, Inc*., 503 F.3d 544, 549–50 (6th Cir. 2007).   The Sixth Circuit has established a three-part test for determining whether specific jurisdiction is consistent with due process:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Air Products*, 503 F.3d at 550.  This Court has stated that "[w]hen an out-of-state defendant intentionally engages in efforts to pursue business in the forum state, especially through actual travels to that state, jurisdiction over that defendant is appropriate under the due process clause." *Nationwide Life Ins. Co. v. Koresko*, No. 05-1066, 2007 U.S. Dist. LEXIS 68154, at *9–10 (S.D. Ohio Sept. 14, 2007).

Hall does not argue that jurisdiction in this case implicates federal due process concerns. In fact, he appears to concede that it does not.  (ECF No. 39, at 9 ("[P]ersonal jurisdiction over

Hall may well comport with federal due process [], but that is not the issue here.").)  Hall also does not dispute that, for purposes of this prong of the analysis, the Court may consider Hall's contacts with Ohio taken in his representative capacity.

Finding no opposition from Hall, and taking all alleged facts as true, the Court agrees with Defendants that Hall intentionally engaged in efforts to pursue business in Ohio.  Hall traveled to Ohio to negotiate the Contract, engaged in regular communications with the Bank (which he knew to be located in Ohio), and allegedly caused fraudulent transactions to be submitted in Ohio, among other activities.  (ECF No. 37-1–37-4.)  Defendants' claim for relief also "arises from" Hall's contacts with Ohio for the same reasons as those set forth in Section II(B)(1)(a)(2) above.  *See Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002) (a "lenient standard" applies when evaluating the "arising from" criterion).  Finally, the Court finds that the exercise of jurisdiction over Hall in Ohio is reasonable.  *See, e.g., Kehoe Component Sales, Inc. v. Best Lighting Prods., Inc*., No. 08-752, 2009 U.S. Dist. LEXIS 74852, at *22-23 (S.D. Ohio, Aug. 19, 2009) (finding jurisdiction "reasonable" over non-resident defendant when defendant had years-long business relationship with an Ohio company, traveled to Ohio several times, and "made trips to Ohio for the specific purpose of negotiating [the contract at issue]").

Considering these arguments and finding no opposition (and finding possible agreement) from Hall, the Court concludes that its exercise of jurisdiction over Hall is compatible with federal due process requirements.

Finding that jurisdiction is appropriate under both Ohio and federal law, the Court **DENIES** Hall's Motion to Dismiss for Lack of Personal Jurisdiction and for Failure to State a Claim Upon Which Relief Can Be Granted as it relates to Hall's 12(b)(2) argument.  (ECF No.

22

25.)

### 2. Hall's 12(b)(6) Argument

Hall moves to dismiss all claims against him—Counts II (Piercing the Limited Liability Company's Veil), III (Fraud), IV (Aiding and Abetting Fraud) and V (Violation of Ohio's Deceptive Trade Practices Act)—pursuant to Rule 12(b)(6) for failure to state claims upon which the Court can grant relief.  Specifically, Hall argues that the economic loss rule bars Defendants' fraud, violation of Ohio's Deceptive Trade Practices Act, and aiding and abetting fraud claims against him.  Hall incorporates by reference the arguments set forth in Counterclaim Defendant MedChoice Financial LLC's Motion to Dismiss (ECF No. 27) and adds: "Because the economic loss doctrine bars the Bank's fraud claim, its aiding and abetting claim (Count III) must fail as well."  (ECF No. 26, at 13.)

The economic loss doctrine does not bar Defendants' fraud and violation of Ohio's Deceptive Trade Practices Act claims for the reasons set forth in Section II(A)(I) and (2) of this Opinion and Order.  For these same reasons, Hall's argument regarding Defendants' aiding and abetting fraud claim fails as well.

Hall also adds that the Court should dismiss "the Bank's alter-ego liability claim against Hall" (presumably, Count II—Piercing the Limited Liability Company's Veil) for the reasons set forth in his personal jurisdiction argument.  (ECF No. 26, at 13.)  This argument fails for the same reasons as those set forth in Section II(B)(1)(a)(1) of this Opinion and Order.

Accordingly, the Court **DENIES** Hall's Motion to Dismiss for Lack of Jurisdiction and for Failure to State a Claim Upon Which Relief Can Be Granted as it relates to Hall's 12(b)(6) argument.  (ECF No. 25.)

### III. Conclusion

Finding that Defendants have adequately pled the elements of each Counterclaim that MedChoice and Hall have challenged and that jurisdiction over Hall in his individual capacity is appropriate in this Court, the Court **DENIES** Counterclaim Defendant Phillip Hall's Motion to Dismiss for Lack of Jurisdiction and for Failure to State a Claim Upon Which Relief Can Be Granted (ECF No. 25) and Counterclaim Defendant MedChoice Financial, LLC's Motion to Dismiss (ECF No. 27).

 

**IT IS SO ORDERED.**

  /s/   Gregory L. Frost                        
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE