# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**MEDCHOICE FINANCIAL, LLC,**

    Plaintiff,

    v.

**ADS ALLIANCE DATA SYSTEMS, INC., et al.,**

    Defendants,

    v.

**PHILLIP W. HALL , et al.,**

    Counterclaim Defendants.

**Case No. 2:11-cv-212**
**JUDGE GREGORY L. FROST**
**Magistrate Judge Mark R. Abel**

## OPINION AND ORDER

This matter is before the Court for consideration of Counterclaim Defendant Michelo Naturile's Motion to Dismiss for Lack of Personal Jurisdiction and for Failure to State a Claim Upon Which Relief Can Be Granted (ECF No. 35), World Financial Network Bank's Response in Opposition to Michelo Naturile's Motion to Dismiss (ECF No. 41), and Counterclaim Defendant Michelo Naturile's Reply in Support of His Motion to Dismiss for Lack of Personal Jurisdiction and for Failure to State a Claim Upon Which Relief Can Be Granted (ECF No. 43). For the reasons that follow, the Court **DENIES** the motion to dismiss.

### I. Background

On March 8, 2012, the Court issued an Order in the above-captioned litigation denying Counterclaim Defendant Philip Hall's ("Hall") Motion to Dismiss for Lack of Jurisdiction and

1

for Failure to State a Claim Upon Which Relief Can Be Granted (ECF No. 25) and Counterclaim Defendant MedChoice Financial, LLC's ("MedChoice") Motion to Dismiss (ECF No. 27). Additional counterclaim defendant Michelo Naturile ("Naturile") now moves to dismiss the claims against him for lack of personal jurisdiction and for failure to state a claim. The facts and standards in this Opinion and Order are reproduced in large part from the Court's March 8, 2012 Order. (ECF No. 42.)

Plaintiff/counterclaim defendant MedChoice defines itself as a financial services company that provides financing to patients of healthcare providers in a specified network. (ECF No. 7 ¶ 8.) Defendant World Financial Network Bank (the "Bank") defines itself as an issuer of private label and co-brand credit card accounts. (ECF No. 15, at 2 ¶ 9.) In September 2005, MedChoice and the Bank entered into a Private Label Credit Card Program Agreement ("the Contract") under which MedChoice or the Bank (the parties dispute this fact) issued credit cards to patients in MedChoice's provider network. Under the Contract, MedChoice acted as the "middle man" between the Bank, the individual patients/cardholders, and the network healthcare providers in order to finance certain medical procedures and products. (*See* ECF Nos. 7 ¶ 1; 15, at 20 ¶ 11.) The Contract remained in effect until the Bank terminated it in September 2010. (ECF Nos. 7 ¶ 59; 15, at 8 ¶ 54).

In March 2011, MedChoice filed suit against the Bank for the Bank's conduct surrounding and leading up to the termination of the Contract. (ECF No. 2.) MedChoice amended its complaint in September 2011 to add the Bank's alleged parent company, ADS Alliance Data Systems, Inc. ("ADS"), as a defendant (together with the Bank, "Defendants").[1]

---

[1]The Bank denies that ADS is its parent company and asserts that ADS was merely "the servicer for the Bank with regard to the administration of the [Contract]." (ECF No. 15 at 2, 19.)

2

(ECF No. 7.) MedChoice asserts that the Bank expressly breached certain terms of the Contract, exercised its discretion under the Contract in bad faith, and wrongfully terminated the Contract. MedChoice also asserts various causes of action against Defendants including tortious interference with contract, unjust enrichment, breach of fiduciary duty, and violation of the Ohio Trade Secrets Act, among others.

Defendants answered MedChoice's complaint on October 18, 2011. (ECF No. 11.) On November 8, 2011, Defendants filed an Amended Answer in which the Bank asserted several counterclaims against MedChoice and its owners, Hall and Naturile (collectively, "Counterclaim Defendants"). (ECF No. 15.) According to Defendants, the Contract required MedChoice to submit credit transactions for approved goods and services to the Bank. The Bank would then place a charge on the patient/cardholder's account and transfer the funds to MedChoice, which would transfer the funds to the healthcare provider. The Bank had discretion as to how it handled the MedChoice accounts and could, for example, "charge back" accounts to MedChoice that it disputed. Defendants assert that Counterclaim Defendants fraudulently submitted charges for unauthorized goods and services that caused the Bank to extend credit it would not otherwise have extended. Defendants also assert that, after the Bank transferred funds to MedChoice for the charged transactions, Counterclaim Defendants did not transfer the funds to the healthcare providers as the Contract required. Finally, when the Bank sought to "charge back" disputed accounts to MedChoice, Defendants assert that MedChoice owed substantially more to providers than it had in its bank account. The Counterclaim sets forth several causes of action against Counterclaim Defendants including breach of contract, fraud, violations of Ohio's Deceptive Trade Practices Act, and defamation, among others.

Hall, MedChoice and Naturile each moved to dismiss certain counterclaims. MedChoice moved on December 15, 2011 to dismiss the Bank's fraud, Deceptive Trade Practices Act, and defamation claims pursuant to Rule 12(b)(6). (ECF No. 27.) The Court found that the Bank adequately pled the challenged claims and denied MedChoice's motion. (ECF No. 42.)

Hall also moved on December 15, 2011 to dismiss the claims against him pursuant to Rules 12(b)(6) and 12(b)(2). (ECF No. 25.) The Court denied Hall's motion regarding his Rule 12(b)(6) arguments for the same reasons that it denied MedChoice's motion. (ECF No. 42.) Regarding personal jurisdiction, Hall argued that the Court could not consider his corporate contacts—the acts that Hall performed in his representative capacity for the benefit of MedChoice—in determining whether the Court had jurisdiction over him individually. The Court disagreed. In denying Hall's motion, the Court relied on the alter ego theory of liability to pierce the corporate veil and attribute Hall's corporate contacts to him personally for purposes of jurisdiction. Considering these contacts, Hall had a substantial connection to Ohio and the Court concluded that jurisdiction was appropriate. (ECF No. 42.)

Naturile now presents a similar motion to dismiss for lack of personal jurisdiction and for failure to state a claim. Naturile adopts MedChoice's Rule 12(b)(6) motion as his own and does not present any new arguments on this issue. Naturile's Rule 12(b)(2) argument, however, presents a new question for the Court. Like Hall, Naturile argues that this Court does not have jurisdiction over him in his individual capacity. Unlike with Hall, the Bank does not allege or argue that Naturile is MedChoice's alter ego. The crux of the issue here is whether there exists a second exception to the fiduciary shield doctrine where the individual engaged in tortious acts in his corporate capacity. The Court now considers Naturile's Rule 12(b)(2) and Rule 12(b)(6)

4

arguments.

## II. Discussion

### A. Rule 12(b)(2) Analysis

Federal Rule 12(b)(2) provides a vehicle for dismissal when the Court lacks personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). In general, the plaintiff bears the burden of establishing personal jurisdiction over the defendant. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). Initially, "the complaint must have 'established with reasonable particularity' those specific facts that support jurisdiction." *Palnik v. Westlake Entm't*, 344 F. App'x 249, 251 (6th Cir. 2009). Then, "in the face of a properly supported motion for dismissal, the plaintiff must not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen*, 935 F.2d at 1458. A court may hold an evidentiary hearing to resolve apparent factual questions raised in the briefs or it may decide the motion on the affidavits alone. *Id.* Absent an evidentiary hearing, a court must consider the pleadings and affidavits in the light most favorable to the plaintiff and the plaintiff must make a prima facie showing of jurisdiction in order to defeat the 12(b)(2) motion. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996).

The parties do not dispute the facts surrounding Naturile's Rule 12(b)(2) argument. Naturile attaches one affidavit to his motion—his own—asserting that he has not had any contact in his personal capacity with the state of Ohio. (ECF No. 35-2.) Defendants attach four affidavits from ADS employees detailing Naturile's contacts with Ohio as a representative of MedChoice. (ECF No. 41-1–41-4.) Neither party disputes the other's factual contentions, and neither has requested an evidentiary hearing. The Court will therefore decide Naturile's motion

5

on the briefs and affidavits alone and must consider the Counterclaim in the light most favorable to Defendants. *See CompuServe*, 89 F.3d 1257 at 1262. The Bank, as counterclaim plaintiff, must make a prima facie showing that this Court has jurisdiction over Naturile in order to defeat Naturile's motion. *See id.*

Both state and federal law are relevant to the question of whether a plaintiff has carried his burden in establishing personal jurisdiction over a defendant. *Int'l Tech Consultants, Inc. v. Euroglas S.A.*, 107 F.3d 386, 391 (6th Cir. 1997). A federal court sitting in diversity may not exercise jurisdiction over a defendant unless (i) courts of the forum state would be authorized to do so under state law and (ii) jurisdiction is compatible with federal due process requirements. *Id.*

Ohio's long-arm statute does not give Ohio courts jurisdiction to the limits of the due process clause. *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012) (citing *Goldstein v. Christiansen*, 70 Ohio St.3d 232, 238 n.1, 638 N.E.2d 541 (1994)). This Court must therefore determine whether Ohio courts would be authorized to exercise personal jurisdiction over Naturile pursuant to Ohio's long-arm statute and Ohio case law.

### 1. State Law Analysis

#### A. Tort/Fraud Exception to the Fiduciary Shield Doctrine

Ohio courts recognize the fiduciary-shield doctrine as a limit to a court's exercise of personal jurisdiction. *See, e.g., State ex rel. DeWine v. S&R Recycling, Inc.*, 7th Dist. No. 09-CO-45, 2011-Ohio-3371, ¶ 27; *Heritage Funding & Leasing Co. v. Phee*, 120 Ohio App. 3d 422, 430, 698 N.E.2d 67 (10th Dist. 1997). The fiduciary-shield doctrine provides that corporate employees performing acts in their corporate capacity are not subject to the personal jurisdiction

6

of a court for such acts. *S&R Recycling*, 2011-Ohio-3371, ¶ 27.

The parties appear to agree that, prior to 2011, Ohio courts recognized a tort/fraud exception to the fiduciary-shield doctrine. *See Heritage Funding & Leasing Co. v. Phee*, 120 Ohio App. 3d. 422, 430, 698 N.E.2d 67 (10th Dist.1997) (citing *Nat'l Precast Crypt Co. v. Dy-Core of Pa., Inc.*, 785 F. Supp. 1186, 1191 (W.D. Pa. 1992)); *Herbruck v. LaJolla Capital Corp.*, 9th Dist. No. 19586, 2000 Ohio App. LEXIS 4668, at *9 (Sept. 27, 2000) (citing *Heritage Funding*). The exception applies where the defendant committed tortious acts in his corporate capacity. *Heritage Funding*, 120 Ohio App. 3d at 430. According to one court, the exception derives from "substantive legal theories that ignore the general corporate law rule of limited liability." *Nat'l Precast Crypt Co.*, 785 F. Supp. at 1191. The court stated:

> [A] corporate agent may be held personally liable for torts committed in the corporate capacity. Accordingly, if the corporate officer engages in tortious conduct in his/her corporate capacity in the forum, courts will consider this conduct as contact with the forum sufficient to support a finding of personal jurisdiction over the officer in his/her individual capacity.

*Nat'l Precast Crypt Co.*, 785 F. Supp. at 1191.

In *Heritage Funding*, an Ohio Court of Appeals cited *National Precast Crypt Co.* and applied the same logic to a corporate employee who made fraudulent misrepresentations in his corporate capacity. *Heritage Funding*, 120 Ohio App. 3d at 430. Stating that "Ohio law recognizes that corporate officers may be liable in their individual capacity for acts of fraud," the court found that the "trial court erred in determining that plaintiffs failed to set forth a factual basis for permitting the court to assert personal jurisdiction over defendant in his individual capacity." *Id*.

This Court has recognized a tort/fraud exception in Ohio law on more than one occasion.

*See NPF XII, Inc. v. Special Care, Inc*., No 2-1048, 2001 U.S. Dist. LEXIS 24347, at *13–14 (S.D. Ohio July 17, 2001) (citing *Heritage Funding* and stating that fraud represents a tort exception to the asserted defense of the fiduciary shield doctrine); *see also Nationwide Life Insurance Co. v. Koresko*, No. 5-1066, 2007 U.S. Dist. LEXIS 68154, at *7–8 (S.D. Ohio Sept. 14, 2007) ("[W]hile Ohio recognizes the fiduciary shield doctrine, it is not recognized where a representative of a corporation is personally involved in the actions which make the assertion of jurisdiction appropriate."). Some authority suggests that the Sixth Circuit has also interpreted Ohio law to recognize such an exception. *See Flynn v. Greg Anthony Constr. Co.*, 95 F. App'x 726, 740–41 (6th Cir. 2003) (noting, in dicta, that "where an out of state corporate officer 'is actively and personally involved in the conduct giving rise to the claim,' " such involvement "likely is sufficient" to establish jurisdiction in an Ohio court) (citing *Balance Dynamics Corp. v. Schmitt Inds., Inc*., 204 F.3d 683, 698 (6th Cir. 2000)).

Notwithstanding these precedent cases, Naturile argues that an Ohio Court of Appeals recently rejected the tort-fraud exception and therefore redefined Ohio law on this issue. *See State ex rel. DeWine v. S&R Recycling, Inc*., 7th Dist. No. 09-CO-45, 2011-Ohio-3371, ¶ 26. *S&R Recycling* is a case involving Ohio's environmental regulations. The defendant corporation owned property that violated Ohio's hazardous-waste and solid-waste laws. The court was "able to exercise jurisdiction over [the defendant corporation] in this case because the corporation owns land and transacts business in the state." *Id*. ¶ 24. The state argued that the court also had jurisdiction over the company's principals in their individual capacities because "[their] actions maintaining the ongoing violations at the Facility also *prove* that they were transacting business in the State of Ohio, causing tortious injury to the citizens of Columbiana County and using or

possessing real property in this state." *Id*. ¶ 23 (emphasis added). The state offered "no further analysis of this argument" in addition to the quoted language above. *Id*. In denying this argument, the court stated that "[a]lthough the statute may provide grounds for liability, it does not automatically confer jurisdiction over out-of-state defendants." *Id*. ¶ 25. The court did not mention the fiduciary shield doctrine or *Heritage Funding* in this section of its analysis. *See id*. ¶¶ 23–26.

This holding does not disturb the tort/fraud exception that the *Heritage Funding* court recognized. The tort/fraud exception (or any exception based on personal liability) does not "prove" jurisdiction. *See, e.g., Heritage Funding*, 120 Ohio App. 3d at 430. Liability is directly relevant because, where a court can impose personal liability on an individual for torts he committed in his corporate capacity, the court likewise can attribute those tortious acts to the individual for purposes of jurisdiction. *Id*.; *Nat'l Precast Crypt Co.*, 785 F. Supp. at 1191. The court must still determine whether the acts qualify as sufficient contacts under the relevant state or federal jurisdiction standards. *See, e.g., Nationwide Life Insur. Co.*, 2007 U.S. Dist. LEXIS at *8 (exception applies when individual is involved "in the actions which make the assertion of jurisdiction appropriate"). This analysis requires two steps; consistently, the *S&R Recycling* court denied the state's one-step argument that liability "proved" jurisdiction. 2011-Ohio-3371, ¶¶ 23–26. The Court finds that *Heritage Funding* and *S&R Recycling* are consistent and not, as Naturile argues, inapposite.

The Court concludes that Ohio courts would recognize the tort/fraud exception to the fiduciary shield doctrine. Naturile does not offer any other arguments as to why this Court should not consider his corporate contacts such as those set forth in Defendants' affidavits. The

9

Court will therefore consider these contacts—in which Naturile acted in his representative capacity for the benefit of MedChoice—in determining whether Naturile is subject to jurisdiction in his personal capacity. The Court now examines Naturile's contacts in the context of Ohio's long-arm statute.

### B. Ohio's Long-Arm Statute

Ohio's long-arm statute provides, in relevant part:

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

> (1) Transacting any business in this state;
> . . .
> (3) Causing tortious injury by an act or omission in this state;
> . . .
> (6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state;
> . . .

(C) When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him.

Ohio Rev. Code §2307.382.

Defendants assert that jurisdiction over Naturile is proper under Ohio Revised Code 2307.382(A)(1), (A)(3), and (A)(6). Section 2307.382 (A)(1) is "very broadly worded" and encompasses defendants who are "transacting any business" in Ohio, even if the defendant has never visited the state. *Ky. Oaks Mall Co. v. Mitchell's Formal Wear*, 53 Ohio St. 3d 73, 75, 559 N.E. 2d 477 (1990). Ohio courts (including this Court interpreting Ohio law) have found that an individual "transacted business" within the meaning of § 2307.382 when he/she corresponded regularly with an Ohio company and regularly emailed and called plaintiffs in Ohio. *See, e.g., Nat'l City Comm'l Capital, Co. v. Evertile Flooring, Inc.*, Hamilton C.P. No. A0911906, 2010

Ohio Misc. LEXIS 489, at *3 (Jan. 6, 2010) (finding § 2307.382(A)(1) satisfied where "[d]efendants had numerous contacts with Plaintiffs through e-mails and telephone calls, all to Ohio"); *see also NPF XII, Inc. v. Special Care, Inc*., No. C2-00-1048, 2001 U.S. Dist. LEXIS 24347, at *9 (S.D. Ohio, July 17, 2001) (finding § 2307.382(A)(1) satisfied when defendant, among other things, "conducted telephone calls and other correspondence with the plaintiff, which she knew to be an Ohio company").

The Court finds that jurisdiction is appropriate under §2307.382(A)(1) and does not consider Defendants' arguments concerning §§ 2307.382(A)(3) and (A)(6). Other than invoking the fiduciary shield doctrine, Naturile does not oppose this conclusion. Defendants' affidavits establish that Naturile regularly called into bi-weekly telephone conferences held at ADS's offices in Columbus and frequently called and emailed ADS personnel located in Ohio. (ECF No. 41-4, at 2.) Naturile's correspondence revolved around the Contract, which states that "[t]his Agreement shall be a contract made under and governed by the internal laws of the State of Ohio" and vests "exclusive jurisdiction and venue" with this Court. (ECF No. 41-4, at 2; 41-1 Ex. A.) Naturile allegedly submitted charges to the Bank pursuant to the Contract, and Defendants' affidavits assert that "[t]he processing of charge transactions of the MedChoice Program took place at ADS's Retail Corporate location in Columbus, Ohio" and that "[t]he bank account from which the Bank paid daily funds to MedChoice under the Program Agreement was located at Huntington National Bank in Columbus, Ohio." (ECF No. 41-3, at 2.) Necessarily regarding these facts as true, the Court finds that Naturile "transacted business" in Ohio within the meaning of §2307.382(A)(1).

The Court also finds that Naturile's contacts meet the requirements of § 2307.382(C). Again

finding no opposition from Naturile, and taking all alleged facts as true, the Court agrees with Defendants that:

> Both jurisdiction and the causes of action arise out of Naturile's fraudulent scheme to submit into Ohio credit transaction records for unauthorized procedures and to induce the Bank in Ohio into extending credit for those unauthorized procedures, as well as his failures to disclose and concealments—despite regular communications with the Bank and ADS in Ohio—of both the fraudulent submission of credit transactions and MedChoice's fraudulent submission of credit transactions to the Bank for payment when MedChoice knew that it would not use those payments to settle with the Provider who rendered those services.

(ECF No. 41, at 17.)

Defendants have met their burden in establishing that Ohio courts would be authorized to exercise jurisdiction over Naturile in his individual capacity. The Court now considers whether jurisdiction over Naturile comports with federal due process requirements.

### 2. Federal Due Process

A court may exercise personal jurisdiction over a non-resident defendant only if such jurisdiction arises from "certain minimum contacts with [the forum] such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Internat'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal citations omitted). Jurisdiction may be found to exist either generally, in cases in which a defendant's "continuous and systematic" conduct within the forum state renders that defendant amenable to suit in any lawsuit brought against it in the forum state, or specifically, in cases in which the subject matter of the lawsuit arises out of or is related to the defendant's conduct with the forum state. *Brunner v. Hampson*, 441 F.3d 457, 463 (6th Cir. 2006); *Air Products & Controls, Inc*., 503 F.3d 544, 549–50 (6th Cir. 2007). The Sixth Circuit has established a three-part test for determining whether specific jurisdiction is consistent with due process:

12

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Air Products*, 503 F.3d at 550.

The purposeful availment requirement prevents a defendant from being haled into court due to "random, fortuitous, or attenuated contacts." *Burger King v. Rudzewicz,* 471 U.S. 462, 475 (1985) (internal citations omitted). A defendant purposefully avails himself or herself of jurisdiction in Ohio when his or her conduct creates a "substantial connection" with Ohio such that he or she should reasonably anticipate being haled into court there. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1263 (6th Cir. 1996) (citing *Burger King*, 471 U.S. at 474–75).

As for the second factor, the Sixth Circuit has stated, "If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts." *Compuserve*, 89 F.3d at 1267. A "lenient standard" applies when evaluating this criterion. *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002).

Finally, this Court has stated that "[w]hen the first two elements of the test are met, the exercise of jurisdiction over the defendant is presumed to be fundamentally fair." *Id*. at *9. This inquiry turns on whether the forum state has an interest in resolving the conflict at issue and "merely fetter[s] out the unusual cases where that interest cannot be found." *Coast to Coast Health Care Servs., Inc. v. Meyerhoffer*, No. 10-734, 2012 U.S. Dist. LEXIS 6250, at *16 (S.D. Ohio Jan. 19, 2012).

Naturile does not argue that, under federal law, the fiduciary shield doctrine precludes this Court from considering his corporate contacts. Sixth Circuit precedent clearly recognizes a

13

tort/fraud exception to the fiduciary shield doctrine. *Balance Dynamics Corp. v. Schmitt Inds., Inc.*, 204 F.3d 683, 698 (6th Cir. 2000) (trial court erred by not attributing defendants' corporate contacts to them personally for purposes of jurisdiction when they were "actively and personally involved in the conduct giving rise to the claim"). Thus, like in the state law context, the Court may consider Naturile's fraudulent acts performed in his corporate capacity in determining whether jurisdiction is proper.

Considering these acts, Defendants have met their burden in establishing that jurisdiction over Naturile comports with federal due process requirements. Defendants' allegations and affidavits, taken as true, establish that Naturile regularly reached out to Defendants in Ohio regarding the Contract. (ECF No. 41-4, at 2). The Contract—the subject of the fraud—was expressly governed by Ohio law. (ECF No. 41-1 Ex. A.) Naturile allegedly submitted fraudulent charges, which were processed in Ohio, to the Bank and caused the Bank to make unauthorized payments to and from Ohio bank accounts. (ECF No. 41-3, at 2.) Naturile's contact with Ohio was not random or fortuitous and he reasonably should have anticipated being haled into court there. *See, e.g., FRC Int'l, Inc. v. Taifun Feuerloschgeratebau und Vertriebs GmbH*, No. 1-7533, 2002 U.S. Dist. LEXIS 17559, at *12–13 (N.D. Ohio Sept. 4, 2002) (finding "purposeful availment" where defendant "entered into a contract with plaintiff and consequently sent many communications relating to the contract in Ohio," and where these communications "form[ed] the bases of the fraud and breach of contract actions").

Naturile's contacts with Ohio serve as the basis for Defendants' fraud claim and thus the cause of action "arises from" the defendants' activities in the forum. *See id. See also Nationwide Life Ins. Co. v. Koresko*, No. 5-1066, 2007 U.S. Dist. LEXIS 68154, at *12 (S.D.

Ohio Sept. 14, 2007) ("the defendant's activities in the forum state must merely be related to the operative facts of the controversy in order for the cause of action to be considered to arise from the defendant's contacts with the forum") (internal citations omitted).

Finally, absent argument from Naturile, the Court does not find that jurisdiction in Ohio is unreasonable or fundamentally unfair. Defendants have an interest in obtaining relief in Ohio and the case against Naturile's co-counterclaim defendants will proceed in this Court. *See Coast to Coast Health Care Servs.*, 2012 U.S. Dist. LEXIS at *17. This case is therefore not one of the "unusual cases" in which Ohio does not have an interest in resolving the dispute. *See id.*

The Court concludes that jurisdiction over Naturile is compatible with federal due process requirements. Finding that jurisdiction is appropriate under both state and federal law, the Court **DENIES** Naturile's Motion to Dismiss for Lack of Personal Jurisdiction and for Failure to State a Claim Upon Which Relief Can Be Granted as it relates to Naturile's Rule 12(b)(2) argument. (ECF No. 35.)

### B. Rule 12(b)(6) Analysis

Naturile does not present any Rule 12(b)(6) arguments in addition to those that MedChoice presented in its motion to dismiss (ECF No. 27). The Court denied MedChoice's motion on March 8, 2012. (ECF No. 42.) Naturile "recognizes that the Court denied Counterclaim Defendant MedChoice Financial, LLC's Motion to Dismiss (Doc. 42) but incorporates the arguments set forth in MedChoice's Reply to preserve its rights regarding those arguments." (ECF No. 43, at 12 n.6.) For the reasons set forth in the Court's March 8, 2012 Order, the Court **DENIES** Naturile's Motion to Dismiss for Lack of Personal Jurisdiction and for Failure to State a Claim Upon Which Relief Can Be Granted as it relates to Naturile's Rule

15

12(b)(6) argument.  (ECF No. 35)

### III. Conclusion

Finding that jurisdiction over Naturile in his individual capacity is appropriate in this Court and that Defendants have adequately pled the challenged claims, the Court hereby **DENIES** Counterclaim Defendant Michelo Naturile's Motion to Dismiss for Lack of Personal Jurisdiction and for Failure to State a Claim Upon Which Relief Can Be Granted.  (ECF No. 35.)

**IT IS SO ORDERED.**

   /s/   Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE